**RECEIVED**

MAR 1 7 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

ELWOOD J. DOMINGUE                           CIVIL ACTION NO.: 05-2151

VERSUS                                               JUDGE DOHERTY

LAFAYETTE CITY PARISH CONSOL. GOV'T, ET AL.  MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Pending before this Court is the "Motion for Summary Judgment and, Alternatively, Motion to Bifurcate Trial," filed by defendants the Lafayette City-Parish Consolidated Government ("LCPCG" or "the City"), Officer Royce Starring, and Officer Thomas Parker [Doc. 20]. In their motion, *all* defendants seek dismissal with prejudice of "plaintiff's claims" against them and assert the motion for summary judgment "will address plaintiff's various allegations against the City and defendant officers, Starring and Parker, *demonstrating the entitlement of each to summary judgment based on the good faith defense of qualified immunity.*"[1] Although not abundantly clear from the briefs that have been filed by both parties, it appears the officers seek dismissal of plaintiff's "Fourth and Fourteenth Amendment" claims of "excessive force" against them in both their individual and official capacities on grounds of qualified immunity, despite the fact that plaintiff's "Fourth and Fourteenth Amendment" claims are not sufficiently pled in plaintiff's pleadings so as to clarify their basis. The City seeks dismissal of plaintiff's "failure-to-train" and "practices, policies, and procedures claims" on grounds of qualified immunity – notwithstanding qualified immunity does not apply to such claims – and on grounds the officers were adequately trained and the City had in

_____

[1] Nevertheless, as this ruling will make clear, a municipality cannot assert the defense of qualified immunity, nor can a government official acting in his official capacity assert this defense.

place adequate policies regarding use of force, again, notwithstanding qualified immunity does not apply to such claims; the officers seek dismissal of plaintiff's claims against them for punitive damages in both their individual and official capacities;[2] and, alternatively, all defendants move for a bifurcated trial in which defendants' qualified immunity defense is tried to the Court before the requested jury trial on the merits.[3]

The motion is opposed by plaintiff; LCPCG has filed a reply brief, and the matter is now ripe for consideration.

## Factual Background

### I.     The Undisputed Facts

This litigation arises out of an incident in which plaintiff, Elwood Domingue, was restrained and handcuffed by the defendant officers, Starring and Parker, at a fire scene on December 18, 2004. The following facts are undisputed: On the date in question, the Lafayette Fire Department was at the scene of a fire located on The Meadows Boulevard, off Pont des Mouton Road in Lafayette. Officers Starring and Parker were at the scene in their respective official capacities as Lafayette City police officers. Upon learning the apartment building was on fire, plaintiff, a 71-year-old man, and two of his employees – Allen Johnson and David Robin – rushed to the scene to determine whether plaintiff's wife, who lived in a unit located in the apartment complex, was home. At the scene, plaintiff made contact with Officer Starring, who, along with Officer Parker, ultimately handcuffed

---

[2] In his complaint, plaintiff alleges claims for punitive damages against the defendant officers "individually and/or in their official capacities." However, as the case law and this ruling make clear, a plaintiff cannot recover punitive damages from a municipality, nor can he recover punitive damages from a government official acting in his official capacity. Thus, a claim for punitive damages under Section 1983 can only be alleged against a defendant police officer acting in his individual capacity.

[3] As this ruling states hereinafter, a bifurcated trial is not warranted or justified in this case pursuant to *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993).

plaintiff and placed him in the backseat of a police unit. Plaintiff was thereafter evaluated by Acadian Ambulance personnel, who were also at the scene assisting the Lafayette Fire Department, and transported to a local hospital, where he was treated for a fractured/broken arm.  While in the hospital, plaintiff was issued a misdemeanor summons for "remaining after being forbidden" by Officer Starring.  Officer Starring traveled to the hospital for that purpose.

## II.    The Disputed Facts

The facts and circumstances concerning how plaintiff's right arm was broken are vigorously contested by the parties.  Plaintiff contends that, upon approaching Officer Starring and stating his wife lived in the apartment building, he was told he could not approach the building.  Plaintiff admits he placed his hands on Officer Starring, but only after Officer Starring placed his hands on plaintiff's chest.  According to plaintiff, "two or three" people "jumped" him,[4] "pinned" his arms to his side, and purposefully "tripped" him.  Plaintiff testified at his deposition he felt "some knees in [his] back," and then he "finally got handcuffed."  Without identifying specific individuals, plaintiff argues that while "they" were on his back, "they" attempted to pull plaintiff's right arm behind his back to place the handcuffs on plaintiff's right arm.[5]  Plaintiff argues his right arm would not go behind his back because of a recent injury to, and surgery on, his right arm.  Plaintiff contends that, during the handcuffing process, he and his employees told the officers his right arm could not be pulled back because of his prior injury, but that Officer Parker nevertheless pulled the right arm until it "gave way" and he was able to cuff it.  Plaintiff argues the defendant officers then pulled him off

---

[4] Plaintiff testified he was later told it was two people.  See Deposition of Elwood Domingue, attached as Exhibit "1" to plaintiff's opposition brief, at p. 92, ll. 708.

[5] *Id.* at pp. 92-95.

the ground by placing their hands underneath his right "brok[en] arm."[6] Plaintiff testified he was "screaming bloody murder," and that "you can't pick up somebody by an arm that's broke[n]." Plaintiff testified he is unable to identify when the fracture of his arm occurred, that is, whether it was when he fell to the ground, when he was handcuffed, or when he was pulled to his feet.

Defendants's version of events is drastically different. Defendants argue plaintiff approached Officer Starring in an hysterical and excited state, stating he wanted to find out whether his wife was in her apartment. Defendants contend plaintiff was informed immediately no one was in the building, but plaintiff continued to insist he be permitted to get closer to the building. Defendants argue plaintiff became belligerent and, in arguing with Officer Starring, stumbled and fell on uneven ground. Officer Starring testified he, too, fell with the plaintiff, and, once on the ground, decided to handcuff plaintiff in order to restrain plaintiff because of plaintiff's belligerent, resistant, and hostile behavior.

Officer Starring testified he placed a handcuff on plaintiff's left wrist and Officer Parker, who had come over to help, placed a handcuff on plaintiff's right wrist. Officer Starring testified plaintiff did not begin to complain about pain in his arm until after he was handcuffed and had been brought to a seated position on the ground. Officer Parker testified plaintiff did not complain about pain in his arm until after he was handcuffed, but did concede the two individuals with plaintiff might have told him during the handcuffing process plaintiff had had a previous injury with surgery on his right arm. Both officers testified they would not have done anything differently with regard to handcuffing the plaintiff had he specifically stated he had had an injury to his arm prior to the handcuffing, as both officers testified detainees frequently "lie" about such injuries to avoid being

---

[6] *Id.* at pp. 103, ll. 21-25; p. 104, ll. 1-3.

handcuffed.

Officer Starring testified he and Officer Parker lifted plaintiff by positioning their hands underneath plaintiff's armpits and pulling plaintiff up to a seated position.  Officer Parker's testimony on this point corroborates Officer Starring's testimony.  However, Thomas Leblanc, an Acadian Ambulance paramedic who was at the scene of the incident, testified the officers lifted the plaintiff by "each grabb[ing] ahold of him between the elbows and the shoulders on each arm" and picking him up.  Leblanc testified this puts massive pressure on a joint that is not anatomically designed to sustain such pressure.[7]  Leblanc did not testify, however, that he saw Allen Johnson pull the plaintiff *to a standing position*, as plaintiff testified.[8]  Allen Johnson testified he told the officers plaintiff's right arm had been broken, pinned, and plated, but the officers nevertheless pulled the right arm back to be handcuffed, and the officers lifted plaintiff to the ground by grabbing both arms from behind and lifting him up.

### Procedural Background

This Court notes the procedural posture of this case is less than desirable, primarily because plaintiff has failed to specify which particular claims are alleged against which particular defendants, and under what law each claim is alleged and in what capacity. On December 14, 2005, plaintiff filed the instant lawsuit, alleging the following:

> Mr. Domingue brings claims against *the defendants* for violation of his constitutional rights guaranteed by the Constitutions of the United States and of the State of

---

[7] See Deposition of Thomas Leblanc, attached as Exhibit "5" to plaintiff's opposition brief, at p. 31-32.

[8] As will be seen from the deposition testimony cited in detail later in this Ruling, plaintiff testified Allen Johnson ultimately pulled him to his feet. *See* Deposition of Domingue at p. 104, ll. 16-17. Johnson testified, however, that the officers pulled Domingue up, by "grabb[ing] both arms from behind, one on each side and lift[ing] him up." *See* Deposition of Allen Johnson at p. 28, ll. 8-12.  Considering the foregoing, the issue of how plaintiff was raised to the ground clearly is a disputed fact.

Louisiana, and claims pursuant to the Civil Rights Act, 42 U.S.C. § 1983, *et seq.*, the laws of the State of Louisiana including, but not limited to, art. 2315, *et seq.* of the Louisiana Civil Code, and all other applicable federal and state laws for breach of duties imposed upon *defendants* in the following non-exclusive particulars:

a)      Violation of Mr. Domingue's constitutional right to be free from the infliction of bodily harm by reason of brutality, excessive force and/or physical force excessive under the circumstances;

b)      Commission of assault and/or battery upon Mr. Domingue;

c)      Use of force excessive under the circumstances attendant;

d)      Use of excessive force and infliction of bodily harm upon Mr. Domingue with a reckless and callous indifference to his rights protected by the Constitutions of both the United States and Louisiana;

e)      Failure to train and/or inadequate training of the law enforcement officers of the Lafayette City Police Department, specifically, that of Officers Starring and Parker in physically handling an elderly, physically handicapped individual;

f)      Use of practices, policies and/or procedures by the Lafayette City Police Department which foster violation of right and privileges guaranteed by the Constitutions of the United States and the State of Louisiana; and/or,

g)      Use of physical force upon Mr. Domingue that Officers Starring and Parker knew, or under the circumstances reasonably should have know, violated his constitutionally protected rights;

h)      Reckless, willful and callous disregard of the constitutional rights of a then 71-year old man burdened by a crippling injury by engaging in conduct unnecessarily causing public insult, humiliation, and embarrassment and, further, by using excessive, brutal force to body-slam him to the ground and forcefully pry his crippled arm until it gave way by breaking, handcuff him, drag him to a police unit, only to release him to ambulance attendants and the hospital emergency room, and cite him with "remaining after being forbidden," all performed under color of law.[9]  (emphasis added)

On January 27, 2006, the defendant officers and the City filed an answer in which they pled

---

[9] See Plaintiff's Original Complaint for Damages, Doc. 1, ¶11.

the defense of qualified immunity.  [Doc. 3, ¶16].  On April 4, 2006, the magistrate judge, finding

the heightened pleading requirements of *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996) and

*Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) apply, concluded plaintiff's allegations

against the defendant officers in their individual capacities did not sufficiently identify which

constitutional rights the officers personally violated, the facts supporting the alleged violations, and

the reasons why the officers are not entitled to qualified immunity.  Plaintiff was therefore ordered

to file a reply pursuant to Rule 7(a) of the Federal Rules of Civil Procedure.[10]

*Rather than filing a Rule 7(a) Reply*, on May 12, 2006, plaintiff filed his First Amended and

Supplemental Complaint, wherein he alleges, *inter alia*,

> Officers Starring and Parker did knowingly and intentionally commit the acts recited
> herein which deprived Mr. Domingue of his right[] secured by the Fourth and
> Fourteenth Amendments to the United States Constitution, and by the Constitution
> of the State of Louisiana to be protected against the use of excessive force.[11]

As is evidenced by the plaintiff's pleadings and failure to comply with the Order of the

magistrate judge requiring plaintiff to file a 7(a) reply as instructed by the Fifth Circuit Court of

Appeals, this Court finds plaintiff's failure to sufficiently plead his claims include, but are not

limited to, the following deficiencies:

1.  Plaintiff alleges claims against the defendant officers for violations of his Fourth and
    Fourteenth Amendment Rights under the United States Constitution and the

---

[10] Schultea instructs that when public officials sued in their individual capacities plead qualified immunity
in a §1983 case, the district court should "insist that a plaintiff file a reply" under Rule 7(a) Fed.R.Civ.P.  The reply
"must be tailored to the assertion of qualified immunity and fairly engage its allegations."  The court may ban
discovery to allow the prompt filing of a dispositive motion, unless the court finds "that plaintiff has supported his
claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's
conduct at the time of the alleged acts.  Even if such limited discovery is allowed, at its end, the court can again
determine whether the case can proceed and consider any motions for summary judgment under Rule 56."  Schultea
v. Wood, 47 F.3d 1427, 1433-34.

[11] See Plaintiff's First Amended and Supplemental Complaint for Damages, Doc. 10, ¶11(a).

Constitution of the State of Louisiana, without specifying *which* rights have been violated and how the violation of such rights arises under either the Fourth or Fourteenth Amendments of the United States Constitution and/or the Constitution of the State of Louisiana.[12]   Notably, nowhere in either his complaint or amended complaint does plaintiff sufficiently plead *any* claims pursuant to the Fourteenth Amendment or the Louisiana Constitution.

2.   Plaintiff alleges claims of "assault and/or battery" without identifying which defendant committed assault and battery and without identifying any source of law for such claims.  Notably, plaintiff fails to specifically plead any claims against any party pursuant to Louisiana law.  Indeed, plaintiff fails to invoke relief pursuant to any specific Louisiana Civil Code articles, except for plaintiff's generic reference to liability against "defendants" for "violation of . . . . .the laws of the State of Louisiana including, but not limited to, art. 2315, *et seq.* of the Louisiana Civil Code."

3.   Plaintiff alleges a claim against all defendants, the officers are defendants, for "failure to train and/or inadequate training of the law enforcement officers of the Lafayette City Police Department, specifically, that of Officers Starring and Parker in physically handling an elderly, physically handicapped individual," without specifying which party this claim is alleged against and without citing a source of law for such claim.

---

[12] The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV.  The United States Supreme Court has stated "excessive use of force" claims fall under the United States Constitution's Fourth Amendment's guarantee of the right "to be secure [from] ... unreasonable ... seizures" of the person. See *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 927 (5th Cir. 1992), citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

Section 1 of the Fourteenth Amendment to the United States Constitution states:

> **Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend XIV.  Although the plaintiff fails to specify which provision of the Fourteenth Amendment is applicable to his claims, the Court assumes for purposes of this motion the plaintiff intends to invoke Section 1 of the Amendment.

-8-

4.      Plaintiff alleges a claim for the "use of practices, policies and/or procedures of the Lafayette City Police Department which foster violation of rights and privileges guaranteed by the Constitutions of the United States and the State of Louisiana," again without specifying which party this claim is alleged against, which rights guaranteed by both referenced constitutions have been violated, and which source of law serves as the basis for the claim. This Court notes the Lafayette City Police Department is not a party to this case.[13]

5.      The plaintiff alleges claims for punitive damages against the defendant officers in both their individual and official capacities. Existing jurisprudence is clear one cannot obtain punitive damages from officers acting in their official capacities.

Defendants filed the instant motion on August 24, 2007, and all parties were granted extensions of time to complete briefing on all issues. Notably, defendants style their motion a "Motion for Summary Judgment," but in Paragraph 4 of the Motion itself, they refer to the motion as a "Motion for Partial Summary Judgment." [Doc. 20, ¶4]. The distinction is important, because in their motion, defendants do not identify with particularity exactly *which* claims *they* seek to have the Court dismiss, but rather, "address plaintiff's various allegations against the City and the defendant officers, Starring and Parker, demonstrating the entitlement of each to summary judgment based on the good faith defense of qualified immunity" when jurisprudence is clear the defense of qualified immunity is not available to all defendants or to defendants in all capacities.[14] In briefing the issues for the Court, the defendants repeatedly seek relief on behalf of the *"defendants"* throughout their briefing, despite the fact that each defendant sued must be considered and is a separate juridical entity supporting separate claims, separate defenses, and separate factual scenarios.

---

[13] This Court also notes the Lafayette City Police Department is not a separate juridical entity capable of being sued. See this Court's ruling in *Batiste v. Bonin, et al.*, Civil Action No. 06-1352 and cases relied upon therein, wherein this Court ruled the Lafayette Police Department and its Chief of Police do not have the legal capacity to be sued.

[14] As the Court explains herein, only individuals sued in their *individual capacities* are entitled to plead the defense of qualified immunity.

As such, defendants repeatedly seek dismissal of "plaintiff's claims" on behalf of *"all defendants,"* without properly delineating either the claims addressed or arguments made as to which claims. Jurisprudentially, certain claims can be couched against *only* the officers, or *only* the City and certain defenses, such as qualified immunity, are available *only* to certain defendants and *only* in certain capacities. Thus, defendants seek relief to which they are clearly not entitled, *e.g.,* dismissal of plaintiff's claims against the City on grounds the City is entitled to qualified immunity, when the City clearly is not entitled to such relief under well-settled law; however, conversely plaintiff seeks recovery to which he clearly is not entitled, *e.g.*, punitive damages against the City and against the officers in their official capacities.

Both parties' generic references to communal legal theories and claims against collective defendants who stand in stark contrast one to the other complicate the Court's task in ruling on the instant motions. In essence, this Court is asked to dismiss particular claims as to particular defendants when this Court cannot determine what claims are being made against which defendant, under what law, in what capacity, and upon what set of facts. Notwithstanding the foregoing, defendants' motion appears, on its face, to have merit in certain circumstances, thus this Court issues the following ruling.

## Law and Discussion

### I.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary

judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b).[15] Summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Proc. 56(e).

"The moving party bears the burden of identifying an absence of evidence to support the

nonmoving party's case." Capitol Indem. Corp. v. U.S., 452 F.3d 428, 430 (5th Cir. 2006).

"Summary judgment is properly granted if the record does not contain appropriate summary

judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which

the nonmovant would bear the burden of proof at trial." Id. at 430-31. As noted by the Fifth Circuit:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,'

---

[15] As noted hereinafter, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense, as follows:

> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, *the plaintiff bears the burden of rebutting that defense.* In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301-302 (5th Cir. 2004) (emphasis added) (citations and quotations omitted).

by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense, as follows:

> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, *the plaintiff bears the burden of rebutting that defense.* In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301-302 (5th Cir. 2004) (emphasis added) (citations and quotations omitted).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "the court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." Id. In evaluating evidence to determine

-12-

whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

## II.    Qualified Immunity

When a government official abuses his office, an action for damages may be the only realistic avenue for vindication of a petitioner's constitutional guarantees. Anderson v. Creighton, 483 U.S. 635, 638 (1987). On the other hand, allowing suits for money damages against government officials "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Id. The statutory law and jurisprudence has attempted to accommodate these conflicting concerns "by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." Id.

The Fifth Circuit has made clear the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005), citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001). An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. *Michalik*, 422 F.3d at

262, *citing Bazan*, 246 F.3d at 489. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct. *Id.* According to the Fifth Circuit:

> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, *the plaintiff bears the burden of rebutting that defense.* In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301-302 (5th Cir. 2004) (emphasis added) (citations and quotations omitted). Furthermore, in determining whether summary judgment is appropriate, the Court views all of the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007), citing *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 515-16 (5th Cir.2005).

This Court further notes "qualified immunity... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). There is no immunity if *no* reasonably competent officer would have thought his conduct was lawful, "but if officers of reasonable competence *could* disagree on this issue, immunity should be recognized." Id. (emphasis added).

III.   **Analysis**

   A.   **Plaintiff's Claims Against the Defendant Officers for Excessive Force under the Fourth Amendment[16]**

      1.   **Is there evidence to sustain a finding that defendants' complained-of conduct violated plaintiff's Fourth Amendment rights?**

Pursuant to the two-step analysis required in qualified immunity cases, this Court must first inquire whether the plaintiff has alleged the violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). Thus, the Court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *See, e.g., Breen*, 485 F.3d at 332. It is well-settled if a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated. *See, e.g., Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994), *citing King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992).

Here, plaintiff alleges Officers Starring and Parker used excessive force in their conduct, action and the manner selected when restraining and/or handcuffing him and pulling him to his feet. In alleging the use of excessive force under the circumstances by the defendant officers and in opposing the officers' motion for summary judgment, the plaintiff has put forth evidence as to how he was forced to the ground, handcuffed notwithstanding his injury, which was made known to the officers, pulled to his feet once handcuffed and completely subdued in a fashion designed to inflict excruciating pain and perhaps injury or additional injury that, if accurate, could support a finding the

---

[16] Again, this Court notes plaintiff has provided no argument, evidence or clarification as to how the officers' conduct might have violated his 14th Amendment rights.

officers's conduct violated plaintiff's constitutional rights.  Accordingly, this Court concludes
plaintiff has alleged a possible violation of a his clearly established Fourth Amendment rights and
thus, satisfies the first part of the two-part inquiry.

> 2.    **Is there evidence to sustain a finding that under the existing
> circumstances it would have been clear to a reasonable officer that his
> conduct was a violation of the Fourth Amendment?**

The Court must next determine whether there is evidence to sustain a finding that under the
existing circumstances it would have been clear to Officers Starring and Parker that their conduct
was unlawful in the situation they confronted.  In making this determination, this Court notes the
plaintiff alleges claims against the defendant officers for excessive force in both their individual and
official capacities.

> a.    **Government Officials Sued in Their Official Capacities**

Again, plaintiff's lack of clarity in his claims is problematic.  Plaintiff alleges claims of
"excessive force" against Officers Starring *and* Parker in their official capacities, although the source
of law for those claims – whether pursuant to the Fourth or Fourteenth Amendment of the
Constitution, a provision of the Louisiana Constitution, or other Louisiana law – is not pled with
specificity and the facts differ as to each.  It appears, however, both officers seek dismissal of all of
plaintiff's claims on all possible grounds arguing they are entitled to qualified immunity in their
official capacities.

It is axiomatic the defense of qualified immunity does not apply to either municipalities or
government officials sued in their official capacities.  As the Fifth Circuit explained in *Universal
Amusement Co., Inc. v. Hofheinz*, 646 F.2d 996, 997 (5th Cir. 1981):

> [A] local governmental entity sued under s1983 may not assert a good faith immunity

defense. *Owen*, 445 U.S. at 638, 100 S.Ct. at 1409, 63 L.Ed.2d at 685-86. It necessarily
follows that since actions for damages against a party in his official capacity are, in essence,
actions against the government entity of which the officer is an agent, *Monell v. Department
of Soc. Serv.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611, 635 n. 55
(1978), [g]overnment officials sued in their official capacity may not then assert good faith
immunity as a defense. *Briscoe*, 619 F.2d at 403, n. 12.

*See also Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985)

(noting personal immunity defenses are unavailable in an official-capacity action). *Considering the*

*foregoing, the defense of qualified immunity urged by "defendants" as the basis of their request for*

*dismissal of plaintiff's claims can apply only to plaintiff's claims against the defendant officers in*

*their **individual** capacities.* Thus, to the extent the officers acting in their official capacities or the

City seek dismissal of plaintiff's claims against them on grounds they are entitled to qualified

immunity, such motion is DENIED.

### b.   Officers Sued in Their Individual Capacities

Plaintiff, also, alleges claims of "excessive force" against Officers Starring and Parker acting

in their individual capacities. Again, the source of law for and nature of the claims is not pled with

specificity. However, the officers seek dismissal of "plaintiff's" claims on grounds they are entitled

to qualified immunity in their individual capacities.

The doctrine of qualified immunity clearly applies to government officials acting within their

individual capacities. Due to the unique burden-shifting applied in qualified immunity cases,

*plaintiff bears the burden to rebut* the defendant officers' allegations that their conduct was

reasonable under the circumstances. In making the foregoing determinations, this Court may not

resolve disputed historical facts. Similarly, this Court may not assess the credibility of either party.

"Any credibility determination made between the officer's and plaintiff's version of events is

inappropriate for summary judgment." *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005),

-17-

citing *Bazan v. Hidalgo County*, 246 F.3d 481, 492 (5th Cir. 2001).

In the instant case, Officers Starring and Parker have asserted the defense of qualified immunity in their answer thus triggering plaintiff's burden to rebut. Therefore, the burden shifts to plaintiff to rebut the officers' allegations that their actions were reasonable under the circumstances. In rebuttal, plaintiff offers his deposition testimony that he was tripped by Officer Starring, slammed to the ground face-first, roughly handcuffed despite informing the officers he had a previous injury to his right arm, and the officers attempted to lift him by his now-injured right arm, which forced all of his weight onto his right arm and shoulder. Plaintiff also offers the testimony of eyewitnesses Allen Johnson, plaintiff's employee, and Thomas Leblanc, a paramedic with Acadian Ambulance, who generally corroborate plaintiff's version of events.[17]

In support of their argument that they are entitled to qualified immunity in their individual capacities, Officers Starring and Parker offer their own testimony, which sets forth the officers' version of the events leading to plaintiff's injury. According to the officers' version, plaintiff was aggressive and hostile, stumbled and fell while walking, was reasonably restrained and handcuffed by officers who did not know he had suffered a previous injury to his right arm until after he was handcuffed, and was lifted by the officers placing their hands underneath plaintiff's armpits.

After full review of all briefs, the Court concludes there are underlying historical facts in vigorous dispute. Thus, there remain numerous genuine issues of underlying historical material fact

---

[17] This Court notes the testimony of Leblanc and Johnson corroborates the testimony of the plaintiff to the extent the *manner* in which the officers attempted to raise the plaintiff or did actually raise the plaintiff could have caused the plaintiff's injury. No reason has been cited by the plaintiff for his belief that he was actually raised to his feet by Allen Johnson (plaintiff was face-down on the ground and could not have seen the men standing behind him). Nevertheless, this Court notes this fact *may* not be material, as plaintiff testifies the actions of the officers in *attempting* to raise him by putting all of his weight on his right arm could have caused the injury *prior to the time plaintiff believes Allen Johnson lifted him.*

which preclude the entry of summary judgment on the issue of qualified immunity for the officers acting in their individual capacities. Specifically, this Court has identified, at least, these material facts that are in dispute: (1) the facts regarding how the plaintiff fell to the ground (i.e., whether he was tripped and pushed, as plaintiff alleges, or stumbled, as defendants allege); (2) the facts regarding whether the plaintiff or his two employees informed Officers Starring and Parker plaintiff had had surgery on his right arm within the previous year and, as such, his right arm could not be handcuffed without subjecting plaintiff to extreme pain; and (3) the facts regarding how plaintiff, a 71 year old man, was brought off the ground by two officers after having been handcuffed and, it would seem, physically subdued.

As to the first two issues of fact identified by the Court, defendants argue, for purposes of this motion only, that even if plaintiff's allegations that Officer Starring purposefully tripped him are true, such fact should not defeat summary judgment, because there was sufficient justification for having done so given plaintiff's belligerent and resistant behavior. Similarly, defendants argue even if it were true that plaintiff and/or his employees warned the officers plaintiff had had a previous surgery on his right arm, they would not have altered their actions, as they are frequently falsely told by those being restrained that the detainee has an infirmity. The Court finds these arguments on their face, perhaps, compelling. It might or might not have been reasonable for the officers to have acted in the manner they acted, even assuming the allegations of plaintiff are true. Nevertheless, this Court need not make such a determination at this time, because with respect to the *third* issue of fact – concerning how plaintiff, a 71 year old man, was brought to his feet by two officers after having been handcuffed and, arguably, physically subdued – could form a basis for inquiry and require a credibility determination on a pivotal factual issue. Thus, because there are

genuine issues of underlying historical fact regarding how the plaintiff was handled by the officers, in particular how plaintiff was brought to his feet after he was handcuffed and thus posed little, if any, risk of harm or threat, summary judgment is inappropriate at this time on this issue.

This Court notes the parties' versions of how plaintiff was brought to his feet after having been handcuffed are drastically different and hotly contested. Indeed, there are at least *three* versions of how plaintiff was brought to his feet: (1) plaintiff's version; (2) Officer Starring's version; and (3) Acadian Ambulance paramedic Thomas Leblanc's version.

In plaintiff's version of events, the defendant officers attempted to pull plaintiff up by his handcuffed arms by positioning their hands underneath his right "brok[en] arm" and apparently pulling up, which forced all of plaintiff's weight onto his right, now-apparently injured arm, causing possible injury and causing plaintiff to "scream[] bloody murder," as follows:

> Q (Miles Matt, Plaintiff's Attorney):  Okay.  So they eventually got the right arm cuffed, correct?
>
> A (Plaintiff, Elwood Domingue):     Yes, sir.
>
> Q:     And then what – what happened after that?
>
> A:     They tried to stand me up.
>
> Q:     How did they go about that?
>
> A:     They catch that arm with the broke shoulder, broke arm, and both of them, underneath my arm, and I was screaming bloody murder. You can't pick up somebody by – by an arm that's broke. And I told Allen, "Get those guys away from me. Get them away from me, and I'm going to tell you how to pick me up." **So they got away**, and Allen said, "Mr. Domingue," he said, "what – how do you want me to pick you up?" I said, "Put your right arm underneath my right side. Put your left arm underneath my left shoulder," I said, "and pick me up. But don't touch the right arm."
>
> Q:     And he did do that?

A:    Yes, sir.  He – and he was able to pick me up.

Q:    So who picked you up off the ground?

A:    Allen Johnson did.

Q:    Did anyone help him?

A:    I don't think so.

Q:    Was anything said at that point by the officers?

A:    No, I don't think so.  Huh-uh (no).

A:    And were you experiencing any pain in your arm at that point?

A:    Yes, sir.

Q:    When did you first feel like you were having pain in your arm?

A:    Right – as soon as I got up.

Q:    Okay.  So it's when you got up you felt it.  All of this, from the time you fell
      to the ground until the time you got up, how long do you think that took?

A:    Five minutes maybe.

Q:    So as you sit here today, are you able to tell us whether or not you believe the
      arm was broken when you fell or when it was being cuffed?

A:    I can't tell you that, sir.  I can't tell you that.[18]  (emphasis added)

Officer Starring refutes plaintiff's testimony, stating he and Officer Parker pulled plaintiff

to his feet by placing their hands underneath the plaintiff's armpits and pulling up, as follows:

Q (Miles Matt, Plaintiff's Attorney):  Okay.   Then he's sitting down, eventually
                                        does he get to be standing up or do you have
                                        to carry him to the unit?

_____

[18] See Deposition of Elwood Domingue, attached as Exhibit "1" to plaintiff's opposition brief, at p. 103, ll.
18-25; p. 104, ll. 1-25; p. 105, ll. 1-14.

A (Officer Starring):   No, he stands up. From the seating position, we cross his legs and then that essentially helps – he push up with his legs **as we pull him up** and we end up getting him to his feet.

Q:      And you and Parker did that –

A:      Yes.

Q:       – get him to his feet?

A:      Yes.

Q:      Now, **the Acadian Ambulance attendant said that y'all grabbed him between the elbow and shoulder to pick him up to the standing position; is that correct?**

A:      No.

Q:      Okay. Why is it not correct?

A:      From the – the – like here, grab from the  – between the elbow and the shoulder –

Q:      Elbow and the shoulder, yes.

A:       – and pick him up like that?

Q:      Yes.

A:      That wouldn't be possible.

Q:      Why not?

A:      The – we would never get him to his feet. Mr. Domingue weighs almost 300 pounds.

Q:      Well, I thought you said he would help with the leverage from the  – his own feet?

A:      Underneath the arm pit. You – underneath the arm pit here and then you lift up, where most of the pressure is in the shoulder joint.

Q:      Okay. So, if somebody testified that y'all grabbed him between the elbow and the shoulder and picked up straight up with his arms behind him, they would not be telling the truth, correct?

-22-

A:      No.

Q:      Is that what you're saying?

A:      That's what I'm saying.[19] (emphasis added)

Officer Parker was not asked to describe in any detail how the plaintiff got to his feet.

However, Thomas Leblanc, a paramedic with Acadian Ambulance and an eyewitness to the incident,

corroborated plaintiff's testimony:

Q:      That day, did you see any actions of the police officers that you felt were
        inappropriate?

A:      The only way I would feel they were inappropriate was if in fact they heard him say,
        Don't grab my arms, I had surgery. **The way they pulled up on him was kind of
        – I don't want to say brutality – but I was like Wow, I can't believe they did
        that. I do remember telling my partner that**.

        After I heard from being 15, 20 feet away from them hearing him say, Don't pull me
        up by my arm, I had a surgery, don't hurt my arm, and they still lifted him, they just
        drew a little more concern.  But everyone was in the heat of the moment, so I don't
        know if they heard him say that.  I can't say that they did or they didn't.[20]

[ . . . ]

Q:      Let's talk a little bit, Mr. Leblanc, about exactly how they picked him up.  Now, the
        position that Mr. Domingue was on before they began the pick up maneuver, I take
        it he was belly down, face down, with his head turned sideways on the grass?

A:      Yes.

Q:      And his hands were cuffed behind him?

A:      Yes.

---

[19] See Deposition of Officer Royce Starring, attached to plaintiff's opposition brief as Exhibit "8", at p. 72,
ll. 17-25; p. 73, ll. 1025; p. 74, ll. 1-6.

[20] See Deposition of Thomas Leblanc, attached as Exhibit "5" to plaintiff's opposition brief, at p. 25, ll.
23-25; p. 26, ll. 1-17.

Q:     Now, once you are cuffed – and I'm going to stand up and just for the record, describe what I'm doing: I'm putting my own hands near my waist together behind my back.  Where on his arms or on his body did they pick him up to take him up and–

A:     **Each officer was standing on either side of him and they each grabbed ahold of him between the elbow and the shoulder on each arm so the guy standing on his left grabbed his left arm between the shoulder and the elbow and the right did the exact opposite on the right side.**

Q:     And that's the maneuver that, in your opinion, you thought was inappropriate to take him up given his complaints about the shoulder surgery?

A:     Yes.  It's something I've seen before.  You see it on TV . . . that is how they pick someone up after they've been cuffed.  The only thing that drew me off was when they did it after telling him he's got the injury to the arm.  He was not hurt in another other area.  He could have gotten up on his own is what I'm getting at.

Q:     The reason you think it's inappropriate is when you grab it, you take the leverage from that part of the arm, it's going to twist your arms and your shoulders back?

A:     It's going to twist you in a way that you shouldn't go.  It's an anatomically – it is not a correct way for your arm to be pulled up.  If you were pulled forward, you've got that extra leeway to go forward.  Backwards you only have so far.  You can only bend your femur back so far before it breaks.  So that definitely drew my concern.

Q:     And you could hear him tell the officers that he had had shoulder surgery from your position approximately 20 feet away?

A:     Yes.[21]

Significantly, Leblanc testified he was shocked by the actions of the officers, inasmuch as *he* heard – standing 20 feet away – plaintiff state he had a prior injury to his right arm.  Leblanc testified he "[could not] believe" the officers lifted plaintiff in this manner.[22]  Leblanc, however, does not testify Allen Johnson was the person who ultimately pulled the plaintiff to his feet, as plaintiff

---

[21] *Id.* at p. 31, ll. 16-25; p. 32, ll. 1-25; p. 33, ll. 1-17.

[22] *Id.* at p. 39, ll.15-18.

testified.  Clearly, the manner and by whom plaintiff was brought to his feet is in dispute.

The dispute of fact concerning how plaintiff was raised to his feet, is even more significant given the testimony of Dr. John Schutte, an orthopedic surgeon and plaintiff's treating physician, who testified it is impossible to determine when the fracture of the plaintiff's arm occurred, as follows:

Q (John Swift, Defense Counsel):     Given the history that I just gave you from the patient is it a fair statement that you are unable to say more probably than not which traumatic event caused the fracture that you saw?

A (Dr. Schutte):     I mean if he fell on his shoulder he definitely could have broke [sic] if he falls.  I guess if his arm is in a position and they try to pick his body weight up by his arm, I mean, that could break it too.  It's really hard to tell.  It may have been broken before they ever put handcuffs on him if he fell on it.  I really can't tell you anything more.[23]

Thus, this Court notes while defendants' arguments that it would have been proper to force plaintiff to the ground and to handcuff him despite his complaints of pain might have merit, the same arguments do not have the same impact with respect to how plaintiff was brought to his feet, *because at the point plaintiff was handcuffed, he would no longer have been a threat to the officers, and the degree of force used at that point becomes a pivotal issue.*[24]  Given the divergent accounts of the parties on this point, there exist genuine issues of underlying historical fact and thus, summary judgment is inappropriate.

---

[23] See Deposition of Dr. John P. Schutte, attached as Exhibit "K" to defendants' memorandum in support of motion for summary judgment, at p. 20, ll. 2-16.

[24] Thus, the officers' argument that the incident qualifies as a "tense, rapidly evolving situation" appears to be relevant only up to the point that plaintiff was actually lying on the ground, face down, and handcuffed.  At the point plaintiff was handcuffed and restrained, plaintiff would no longer pose the same possible threat to the officers, and thus, any force used at that point becomes key to the issue of whether excessive force was used by the officers as of *that* point in time.

Therefore, the underlying historical facts concerning how plaintiff was raised from the ground are in dispute and are material and pivotal to the determination of the issue of whether a violation of plaintiff's Fourth Amendment rights occurred, and whether the defendant officers acted in an objectively reasonable manner in view of the existing law and facts available to them. Thus, the Court concludes plaintiff has satisfied his burden of rebutting the officers' qualified immunity defense, and the officers' motion for summary judgment requesting dismissal of plaintiff's excessive force claims against them in their individual capacities on grounds of qualified immunity pursuant to – for these purposes only "the Fourth and Fourteenth Amendments" – is DENIED.

**B.     Plaintiff's Claims Against the City**

Plaintiff alleges claims against the City for its failure to train and/or adequately train the law enforcement officers of the Lafayette City Police Department and for the use of practices, policies, and/or procedures by the Lafayette City Police Department which foster violation of "rights and privileges guaranteed by the Constitutions of the United States and the State of Louisiana." In his complaint, plaintiff again fails to specifically allege *which* defendant and which claims are alleged and which constitutional right under which constitution, state or federal, applies to the claim for "failure to train." With respect to the "practices, policies, and procedures" claim, plaintiff again fails to allege which provisions of the United States or Louisiana Constitutions provides the legal basis for the claim. The Court also notes plaintiff couches his "practices, policies, and procedures" claim against the Lafayette City Police Department, which is not a party to this action.[25]

---

[25] As this Court has previously noted, the Lafayette City Police Department is not a juridical entity capable of being sued. It appears the plaintiff's insertion of the "Lafayette City Police Department" in his complaint is simply an incident of inartful drafting. Nevertheless, plaintiff is ordered to address this issue and clarify whether a claim is asserted against the Lafayette City Police Department in the outline of claims he is being ordered to file this date.

-26-

Notwithstanding the foregoing, as both parties address the claims as against the City, this Court will analyze the argued claims as couched against the City.

Municipalities are not vicariously liable for the actions of their employees under §1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury. *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996), *citing Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611, 638 (1978). Thus, §1983 liability attaches to a municipality only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Baker*, 75 F.3d at 200, *citing Monell*, 436 U.S. at 694.

The Fifth Circuit has held there are several methods for establishing municipal liability under §1983. A plaintiff may demonstrate municipal liability based on: (1) a formally adopted municipal policy; (2) an informal custom or practice; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. *Monell*, 436 U.S. at 694 (establishing that §1983 municipal liability may be based on an officially adopted and promulgated policy); *Johnson v. Moore, III*, 958 F.2d 92, 94 (5th Cir.1992) (noting that municipal liability may be founded on a persistent or widespread practice of which actual or constructive knowledge is attributable to the policymaking authority); *City of Canton*, 489 U.S. at 385-87 (providing that inadequacy of training may serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to the rights of persons); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability).

-27-

"Defendants" also, seek summary judgment on "plaintiff's claims" on grounds the Lafayette Police Department adequately trained Officers Starring and Parker and had in place proper policies and practices regarding its officers' conduct, as follows.[26]

### 1.     Failure to Train/Adequately Train

This Court will assume for these purposes only, that plaintiff alleges claims against the City of Lafayette, for its failure to train and/or adequately train the two defendant officers.  However, plaintiff does not identify the source of law for the claims in his complaints.  The City seeks dismissal of this claim on grounds "the City is entitled to qualified immunity" and on grounds "the City adequately trained the defendant officers."

First, this Court has already held the defense of qualified immunity does not apply to either municipalities or government officials sued in their official capacities.  *See, e.g., Universal Amusement Co., Inc. v. Hofheinz*, 646 F.2d 996, 997 (5th Cir. 1981) ("a local governmental entity sued under s1983 may not assert a good faith immunity defense."); *see also Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985).  Consequently, the City's request for summary judgment arguing dismissal of plaintiff's claims based upon a failure to train claims, on grounds it is entitled to qualified immunity is DENIED.

With respect to the City's argument that it adequately trained Officers Starring and Parker, the Court will look to established Fifth Circuit law addressing such claims in §1983 cases.  In order to hold a municipality liable under §1983 for its employees' acts, a plaintiff must show that a policy

---

[26] The City also argues there can be no basis for a cause of action against the City for alleged "practices, policies and procedures by the Lafayette Police Department" that foster a violation of constitutional rights and/or an alleged "failure to train" officers "unless it can be shown that the underlying conduct of the officers is actionable." However, as has been discussed herein, this Court concludes there are genuine issues of historical fact regarding whether the conduct of the officers is actionable. Accordingly, this cannot be a basis upon which to grant summary judgment in the City's favor.

of hiring or training caused those acts. Such a showing requires proof that (1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *Baker*, 75 F.3d at 200, *citing City of Canton v. Harris*, 489 U.S. 378, 385-87, 109 S.Ct. 1197, 1205-07, 103 L.Ed.2d 412, 424-26 (1989); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir.1992). Where the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the "deliberate indifference" standard that applies to supervisor liability.[27] *See Benavides*, 955 F.2d at 972; *City of Canton*, 489 U.S. at 389. A municipality acts with "deliberate indifference" in adopting an otherwise constitutional policy if

> in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Benavides*, 955 F.2d at 972.

Furthermore, it is well-settled in the Fifth Circuit that "proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training." *See, e.g., Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998) (citation omitted). Rather, a plaintiff "must demonstrate 'at least a pattern of similar incidents in which the citizens were injured ... to establish

---

[27] To establish supervisory liability, the plaintiff must show: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. *Baker*, 75 F.3d at 199, citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986).

Although defendants cite the standard for supervisory liability under §1983 as set forth in *Baker, Hinshaw* and *Roberts v. City of Shreveport*, 397 F.3d 287, 292-93 (5th Cir. 2005) (cited by defendants), as *Baker* makes clear, the standard for supervisory liability is more appropriately applied to claims against supervisors (e.g., chiefs of police), rather than municipalities.

-29-

the official policy requisite to municipal liability under Section 1983.'" *Id.* (citation omitted).

As movant, the City has the burden of identifying an absence of evidence to support plaintiff's failure-to-train claim. In support of its argument that Officers Starring and Parker were adequately trained, the City offers the deposition testimony of Officer Parker, who testified he has been trained in proper defensive tactics to be deployed in effecting arrests and in using discretion to tailor the level of force to the circumstances. The City also attaches the expert report of George Armbruster – offered as an expert in the areas of arrest techniques, police procedures, police training, corrections issues, and use of force – who attests the following:

> A review of the training records of both Officer Starring and Officer Parker shows that both of these officers had received the required training as mandated by the State of Louisiana POST Council and had in fact received training above and beyond the minimum training required. The Lafayette Consolidated Government provided not only the required training but additional training to both of these officers.[28]

The burden thus shifts to plaintiff to rebut the evidence proferred by defendants. In response, plaintiff primarily focuses on the training of Officer Parker, arguing Officer Parker testified he was not trained how to "physically handle arrests" and had never had any specialized training in how to handle the victims of a fire or citizens with infirmities.[29]  Plaintiff emphasizes that Parker, a field training officer who trains new recruits, does not train officers in how to physically handle arrests or detainees.

Review of Officer Parker's testimony, however, does not support plaintiff's arguments. Parker *actually* testified police officers are trained in proper defensive tactics for physically handling

---

[28] Expert report of George Armbruster, attached as Exhibit "A" to defendants' motion for summary judgment, p.3.

[29] Again, the necessity for particularized identification of claims made against which defendant and for what claim and what defense is apparent given the requirement of a **causal connection** noted in *Baker, supra.*

an arrestee or detainee through defensive tactics taught at the police academy both during the initial-phase training required of new officers and during annual week-long mandatory in-service defensive tactics training sessions.[30]  Furthermore, Parker testified Lafayette police officers are trained in how to handle the arrests of individuals who have infirmities, the elderly, and victims of fire during their police academy training.[31]  Plaintiff provides no evidence this is not the case, nor does plaintiff provide evidentiary support for his argument that *specialized* training in these areas is or is not required, nor does plaintiff offer support for his contention any such failure of *the City*, itself, to provide such specialized training "resulted in police officers administering excessive force and abusive tactics to detain/arrest a 71 year old man."  Officer Parker testified certain training is received through the police academy and specialized training in how to handle the victim of a fire, particularly, "comes with experience."[32]

Thus, although plaintiff focuses primarily on the training Officer *Parker* received, plaintiff does not offer sufficient evidence supporting his claim, in the face of defendants' motion, that *either* of the officers did not receive adequate training while employed by the City.

Finally, plaintiff attempts to support his claim the City of Lafayette failed to properly train its officers and in particular, these two officers, with the following statement: "[The City's] failure to train is further highlighted by failing to do anything about these officers' conduct after 31 suits and complaints against them."  Without elaborating further, plaintiff attaches only the Lafayette

---

[30] See Deposition of Officer Parker, attached as Exhibit "C" to defendants' motion for summary judgment, at pp. 28-30.  It appears plaintiff is confusing the training that Officer Parker and all other officers receive in defensive tactics and Parker's duties as a field training officer for the City.  Parker clarified that *he* does *not teach* defensive tactics training, but he confirms that *he received* such training.

[31] Id. at pp. 111-12 & 118.

[32] *Id.* at 111-12.

Police Department "Histories of Complaints," maintained by the Department's Internal Affairs Division, for both Officers Starring and Parker.

However, this Court's review of Officer Starring's Complaint History shows in his thirteen years on the police force, Officer Starring has had *one* complaint filed against him for battery and *three* complaints for excessive force. The complaint of battery was investigated by Internal Affairs and was ordered closed by the Chief of Police. With respect to the complaints of excessive force, the following summary describes the complaints:

| **Date** | **Complaint** | **Disposition** |
|---|---|---|
| January 30, 1997 | Excessive Force (threw complainant to the ground) | Not sustained |
| April 9, 2000 | Excessive Force | Exonerated |
| May 22, 2000 | Excessive force/Rude | Unfounded |

The records supplied, also, identify two lawsuits filed against Officer Starring, one for false arrest and the instant lawsuit for excessive force. No disposition is given for the false arrest lawsuit.[33]

This Court's review of Officer Parker's history reflects *no complaints* of excessive force having been filed against him, however two *lawsuits* having been filed against him for excessive force – the instant lawsuit and one other. No disposition is given for the latter lawsuit.[34]

Plaintiff provides no additional details concerning the alleged 31 complaints or the lawsuits, including the facts of the incidents, the manner in which the investigations were conducted, or any information showing the complaints were not adequately investigated and addressed by the Police

---

[33] Officer Starring's Complaint and Litigation history appears at Exhibit 12 to plaintiff's memorandum in opposition to defendants' motion for summary judgment.

[34] Officer Parker's Complaint and Litigation history appears at Exhibit 13 to plaintiff's memorandum in opposition to defendants' motion for summary judgment.

Department and/or the City or that the reflected disposition was in some fashion improper.[35] On the contrary, the documentation submitted by plaintiff shows the complaints were investigated by the Police Department and/or Internal Affairs and none was sustained. In short, plaintiff has failed to identify the alleged "31 complaints and suits" or to link the alleged complaints and/or lawsuit identified as excessive force or battery to the alleged lack of training by the City in any meaningful way.[36]

While the alleged complaints/lawsuits for use of excessive force and/or battery against Officers Starring and/or Parker constitute more than a "single episode" of complaints of excessive force or battery, the same documents also identify an investigation of each incident and the result of the investigation and disposition made by the City of those complaints. Thus, plaintiff's failure to provide additional, relevant evidence concerning the complaints/lawsuits results in this Court not having sufficient information to determine whether there is a causal link between the "31 suits and complaints" alleged by plaintiff and plaintiff's allegation the City failed to train their officers and that the alleged failure played a causal role in plaintiff's injury.

Considering the foregoing, this Court concludes plaintiff has failed to carry his burden to meet the evidence and argument presented by the City on the issue of plaintiff's allegations. Thus, plaintiff has failed to carry his burden to meet an otherwise validly presented motion and thus, movant must prevail. The Court so concludes despite the plaintiff's and defendant's failures to identify with particularity the claims, defenses, and sources of law relied upon, as this Court

---

[35] This Court also notes the plaintiff fails to interpret or otherwise define or identify the nature of the other entries in the complaint histories of the defendant officers, particularly references to a complaint identified as "CUBO" in Officer Starring's history.

[36] Again, plaintiff has in no way identified the nature of or related the other entries found within the document supplied to the type of claims now before this Court.

concludes under any potentially applicable source of law, state or federal, plaintiff fails to carry his burden on this issue.  Plaintiff provides no evidence or argument the investigation and disposition were improper or hollow and plaintiff has failed, in any fashion, to identify or relate the alleged "31 suits and complaints" to the instant complaint.  Therefore, summary judgment is GRANTED in favor of the City on this aspect of its motion, and plaintiff's claims couched under a claim the City failed to adequately train Officers Starring and Parker is DISMISSED WITH PREJUDICE.

### 2.       The City's Practices, Policies, and Procedures

Plaintiff also alleges a claim against the City arguing its use of "practices, policies, and/or procedures by the Lafayette City Police Department which foster violation of rights and privileges guaranteed by the Constitutions of the United States and the State of Louisiana."[37]  Plaintiff again fails to specify *which* rights and privileges guaranteed by the Constitutions of either the United States or the State of Louisiana might have been violated by the City.  The City seeks dismissal of the plaintiff's claim on grounds it is due qualified immunity,[38] and also argues it had in place reasonable practices, policies, and procedures regarding officers' conduct.

As this Court has previously noted, municipalities are not due qualified immunity nor is a city vicariously liable for the actions of their employees under §1983.  "Municipal liability inures only when the execution of a local government's policy or custom causes the injury."  *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir.1996); see *Victoria W.*, 369 F.3d at 482; *Williams v. Kaufman*

---

[37] See Plaintiff's Original Complaint for Damages, Doc. 1, ¶11(f).

[38] The City has failed to separately address the plaintiff's claims couched as "failure to train" and "practices, policies and procedures" claims.  For this reason, and the other reasons noted in this ruling, this Court has had significant difficulty analyzing the claims made and arguments presented.  The Court notes the foregoing as a prelude to noting it is not clear whether the City again and also seeks dismissal of plaintiff's "practices, policies, and procedures" claim on grounds it is entitled to qualified immunity.

*County*, 352 F.3d 994, 1014 (5th Cir.2003).  It is axiomatic the defense of qualified immunity does

not apply to municipalities.  *See, e.g., Universal Amusement Co., Inc. v. Hofheinz*, 646 F.2d 996, 997

(5th Cir. 1981); *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114

(1985).

        In order to hold a governmental entity liable for the acts of a non-policymaking employee,

the plaintiff must allege and prove that: "(1) a policy or custom existed; (2) the governmental policy

makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and

(4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for*

*Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir.1996), citing *Palmer v. City of San Antonio*, 810

F.2d 514, 516 (5th Cir.1987); *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir.

2003) (accord); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Piotrowski v. City of*

*Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

        The Fifth Circuit has held proof of random acts or isolated incidents is not sufficient to show

the existence of a custom or policy, as "[i]solated violations are not the persistent, often repeated

constant violations that constitute custom and policy" as required for municipal section 1983

liability.  *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3.  *See also Piotrowski*, 237 F.3d at 581.

Thus, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional

violations." *Id.  See also Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d

375, 383 (5th Cir. 2005).  To demonstrate a governmental policy or custom under §1983, a plaintiff

must show "at least *a pattern* of *similar incidents* in which the citizens were injured." *Estate of*

*Davis*, 406 F.3d at 383; *Fraire*, 957 F.2d at 1278 (accord).

        In support of its argument the City had in place reasonable practices, policies, and procedures

regarding officers' conduct, the City attaches copies of the City's General Order 301.3, which addresses the role of a police officer at an ongoing fire scene; General Order 301.12, which addresses use of force; and General Order 302.1, which addresses adult and juvenile arrest.[39]  The City also offers the expert report of George Armbruster, who opines the applicable General Orders of the Lafayette Police Department are a reasonable set of normal operating guidelines which are in line with those recommended by the International Association of Chiefs of Police.[40]

In response, plaintiff does not refute the existence of the City's practices, policies, and procedures, and fails to brief the issue in its opposition as an issue *separate and distinct* from the issue of training.  Plaintiff also fails to identify a specific policy of the City that the officers followed in violating plaintiff's rights; that such a policy was *known* to the City; and that such policy served as the "moving force" behind the violation of plaintiff's rights.  Thus, plaintiff has presented no other evidence or relevant argument that the City adopted and promulgated a policy of allowing or encouraging its police officers to engage in excessive force when effecting arrests.

The only argument asserted by plaintiff that *could* be interpreted as addressing the procedures or policies of the City *as an issue separate and apart from the issue of training* is plaintiff's allegation there are "31 complaints and lawsuits" against the defendant officers thus, *perhaps*, arguing a "pattern of similar incidents."  However, plaintiff has provided nothing to identify the "31 complaints and suits" as similar or constituting a pattern of similar incidents.  To the contrary, plaintiff provided no explanation of the various acronyms and cryptic entries also found on the bare

---

[39] See Exhibits "B", "D" and "E," attached to defendants' motion for summary judgment.

[40] See Report of George Armbruster, attached as Exhibit "A" to defendants' motion for summary judgment, at p. 3.

-36-

document submitted.  Although argued in the context of the failure-to-train claim, to the extent plaintiff is arguing the existence of these complaints and/or lawsuits as evidence of a *custom or practice* of the City of allowing the use of excessive force, this Court addresses such argument.

As with the failure-to-train claim, plaintiff fails to sufficiently support his claim the City engaged in "practices, policies, and procedures" which violated any of plaintiff's Fourth or Fourteenth Amendment Rights. As this Court has already explained, plaintiff fails to proffer specific details concerning the complaints or the lawsuits, including explanation for otherwise unidentified acronyms and cryptic references on the bare documents as to the entries noted as excessive force and/or battery.  Plaintiff also fails to elaborate upon the facts of the incidents, the manner in which the investigations were conducted, or the any information showing the complaints were not adequately investigated by the Police Department or the City or are similar incidents to the incidents at hand.  Again, the documentation submitted by plaintiff shows not thirty-one, but *three* possibly similar incidents, each of which is shown as having been investigated by the Police Department and/or Internal Affairs and none having been sustained.  Most importantly, plaintiff offers no evidence demonstrating the City's existing policies served as the *moving force* behind the alleged violation of the plaintiff's Fourth or Fourteenth Amendment Rights, as required by existing jurisprudence.

Considering the foregoing, this Court concludes plaintiff has failed to carry his burden to meet the City's evidence and argument that it had proper policies and procedures in place and had no pattern of similar incidents to the one at issue.  As with the plaintiff's claim that the City failed to adequately train officers Starring and Parker, the Court so concludes despite the failure of the plaintiff or defendant to state their claims, defenses and arguments with particularity as under any

source of law, state or federal, plaintiff has failed to carry his burden. Therefore, summary judgment is GRANTED in favor of the City on plaintiff's claim the City engaged in "practices, policies and procedures" which violated his rights under either the Fourth or Fourteenth Amendments, and this claims is DISMISSED WITH PREJUDICE.

### C.    Plaintiff's State Law Claims

Plaintiff alleges a claim for "commission of assault and/or battery upon Mr. Domingue."[41] Plaintiff wholly fails to identify which defendants against whom this claim is alleged and similarly fails to identify a source of law for the claim under applicable Louisiana law. "Defendants" couch their argument under Louisiana law, and as such, "defendants" seek dismissal of the claims on grounds they did not breach a duty to the plaintiff.  It is only within plaintiff's opposition to defendants' motion for summary judgment that plaintiff references Article 2315 of the Louisiana Civil Code and Article 2315's apparent basis for the state law claims alleged.

In their memorandum supporting their motion for summary judgment, "defendants" state:

Defendants further seek dismissal of the pendant state law claims against them alleging assault and battery and negligence. prosecution.[42] [sic] . . .

To the extent "defendants" seek dismissal of plaintiff's claim for assault and battery, this Court concludes neither party has adequately briefed this issue, neither party adequately defines or otherwise presents the argument or analytical framework required for determining whether summary judgment is appropriate with respect to claims for assault and battery under the circumstances

---

[41] See Plaintiff's Original Complaint for Damages, Doc. 1, ¶11(b).

[42] See Doc. 20, p. 39.  This statement contains no typographical error on the part of the Court and is illustrative of the level of presentation and argument found within the filings in this matter.  A review of the briefs filed in this matter shows the defendant officers do *not* argue for dismissal of a claim for malicious prosecution, and indeed, no such claim is pled in plaintiff's complaint or amended complaint.

alleged in this case under applicable law, adequately identifies that law or its application in a law enforcement application. Notably, no party provides the relevant statutory definitions of "assault" and "battery" under Louisiana law, particularly as they might apply to a law enforcement officer.[43]

Consequently, summary judgment on plaintiff's claims of "assault and/or battery" is not appropriate at this juncture, and "defendants'" motion for summary judgment requesting dismissal of plaintiff's claims for assault and battery is DENIED.

### D.   Plaintiff's Claims Against the Officer for Punitive Damages

Plaintiff asserts claims for punitive damages against the defendant officers in both their individual and official capacities without identifying the source of law for such claims. Officers Starring and Parker seek dismissal of plaintiff's punitive damages claims on grounds plaintiff has not put forth sufficient evidence showing the officers' conduct constituted "reckless or callous disregard of, or indifference to, the rights or safety" of the plaintiff.[44]

---

[43] This Court also notes it has concern as to whether defendant would be entitled to summary judgment on this issue given the underlying issues of historical fact that have already been noted by this Court. Given those issues of fact, this Court notes, without deciding, it might not be possible to determine whether the defendant officers' breached an identifiable duty to the plaintiff under the differing factual scenarios alleged to this Court, if, in fact, such a duty exists. The Court renders no findings with respect to this issue at this time.

[44] In their motion for summary judgment, **the officers** identify 42 U.S.C. §1988(b) as the source of law for these claims. Section 1988(b) states:

> (b) Attorney's fees
>
> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

### 1.    Plaintiff's Punitive Damages Claims Against the Officers in their Official Capacities

It is well-established punitive damages cannot be imposed against a municipality in a §1983 action. See *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Although plaintiff has not asserted a punitive damages claims against the City in this case, the Court mentions the foregoing, as a §1983 action against an officer or a city official *in his or her official capacity* is essentially a suit against the government itself and is treated as such.[45]  As such, any claims against the defendant officers *in their official capacities* for punitive damages must be dismissed. Accordingly, the defendant officers' motion for summary judgment seeking dismissal of plaintiff's claims for punitive damages against them *in their official capacities* is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

### 2.    Plaintiff's Punitive Damages Claims Against the Officers in their Individual Capacities

Awards for punitive damages are permitted, however, against a government officer in his or her individual capacity "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983). The Supreme Court has further held "this threshold applies even when the underlying standard of liability for compensatory damages is

---

[45] See, e.g., *Skelton v. Camp*, 234 Fd.3d. 292 (5th Cir. 2000); and *Woodard v* 125 th . *Andrus*, 419 F.3d. 348 (5th Cir. 2005). See also *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n. 2, 117 S.Ct. 1734, 138 L.Ed. 2d.(1991), in which the Supreme Court explained that:

> "a suit against a governmental officer 'in his official capacity' is the same as a suit against [the] entity of which [the] officer is an agent," *Kentucky v. Graham*, 473 U.S. 159; 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), quoting *Monell v. New York City Dept. of Social Services.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and that victory in such an "official capacity" suit imposes liability on the entity that [the officer] represents." *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 LED.2d. 878 (1985).

one of recklessness." *Smith*, 461 U.S. at 56, 103 S.Ct. at 1640.

Officers Starring and Parker argue their conduct "was clearly not in reckless or callous disregard of, or indifference to, the rights or safety" of the plaintiff, while plaintiff argues it was. This Court cannot determine whether the officers' conduct was reckless or in callous disregard of the rights or safety of plaintiff, inasmuch as there are genuine issues of underlying historical fact regarding the conduct of the officers, particularly as to that point of time forward from when plaintiff was handcuffed.  Thus, summary judgment on the issue of whether plaintiff is entitled to punitive damages against the defendant officers in their individual capacities is inappropriate at this juncture, and the officers' motion for summary judgment seeking dismissal of plaintiff's claims for punitive damages against them in their individual capacities is DENIED.

### E.    Bifurcation of Trial

Finally, should the Court deny its motion, defendants seek a bifurcated trial in which defendants' qualified immunity defense is tried before the trial on the merits of the case.  Plaintiff argues against bifurcation on grounds that ordering separating trials will promote judicial inefficiency and a waste of time and resources.  Neither party cites to, or it would seem is aware of, applicable jurisprudence which controls this issue, although plaintiff cites to a Fifth Circuit case addressing the standard for bifurcation of trials, generally.

Bifurcated trials are governed by Rule 42(b) of the Federal Rules of Civil Procedure, which states:

> **(b) Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed.RCiv.P. 42(b).

There are limits on the Court's ability to order separate trials under Rule 42(b).  As the Court

stated in *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993):

> The issue to be tried must be so distinct and separate from the others that a trial of
> it alone may be had without injustice.  This limitation on the use of bifurcation is a
> recognition of the fact that inherent in the Seventh Amendment guarantee of a trial
> by jury is the *general right of a litigant to have only one jury pass on a common issue
> of fact.*" This rule has an additional, pragmatic basis-if two juries were allowed to
> pass on an issue involving the same factual and legal elements, the verdicts rendered
> by those juries could be inconsistent, producing intolerably anomalous results.

(emphasis in original) (internal citations omitted).

After consideration of the arguments of the parties, this Court concludes bifurcation of the

trial in this matter would be unnecessary and judicially inefficient.  The issue defendants seek to try

separately – the defense of qualified immunity for the defendant officers in their individual capacities

– is not so distinct and separate from the other issues in this case that a trial of those issues alone may

be had without injustice.  Indeed, the factual and legal elements inherent in the issues of qualified

immunity are also inherent in the issues of whether the defendant's complained of conduct violated

plaintiff's constitutional rights and whether the officers' actions were reasonable.[46]

Considering the foregoing, defendants' motion for a bifurcated trial is DENIED.

## IV.   Conclusion

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART

defendants' Motion for Summary Judgment, as follows:

---

[46] This Court questions whether bifurcation of trial in this instance would not be in contravention of Fifth
Circuit law.  Nevertheless, this Court concludes it would be inefficient to bifurcate the trial of this matter under the
general law of the Fifth Circuit, and given that no party has briefed the issue of bifurcation in the specific context of
a civil rights case involving qualified immunity, this Court need not explore the specific issue of whether bifurcation
is permitted in qualified immunity cases at this time.

Any aspect of defendants' motion wherein the officers acting in their official capacities or the City seek dismissal of plaintiff's claims against them on grounds they are entitled to qualified immunity is DENIED, as such relief is not provided for in the jurisprudence.

Those aspects of the defendant officers' motion for summary judgment requesting dismissal of plaintiff's claims the officers used excessive force against plaintiff – urged by the defendant officers in their individual capacities and argued on grounds of qualified immunity -- are DENIED, as there exist underlying issues of historical fact that make summary judgment inappropriate at this juncture.

The City's motion for summary judgment requesting dismissal of plaintiff's claim couched as a "failure to train" claim *on grounds it is entitled to qualified immunity* is DENIED; however, the City's motion for summary judgment requesting dismissal of plaintiff's claims couched as a "failure to train" claim is GRANTED for failure of plaintiff to carry his burden, and plaintiff's claim couched as a "failure-to-train" claim is DISMISSED WITH PREJUDICE.

The City's motion for summary judgment requesting dismissal of plaintiff's claim couched as a "practices, policies and procedures" claim is GRANTED for failure of plaintiff to carry his burden, and plaintiff's claim couched as a "practices, policies and procedures" claim as alleged against the City is DISMISSED WITH PREJUDICE.

Defendants' motion for summary judgment seeking dismissal of plaintiff's claims couched as "assault and/or battery" claims is DENIED for failure of both parties to carry their burdens.

The defendant officers' motion for summary judgment seeking dismissal of plaintiff's claims for punitive damages against them in their *official capacities* is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

The defendant officers' motion for summary judgment seeking dismissal of plaintiff's claims for punitive damages against them in their *individual capacities* is DENIED, as there remain genuine issues of material fact regarding the officers' conduct and the plaintiff's entitlement to such damages.

Defendants' motion for a bifurcated trial is DENIED.

**IT IS ORDERED that plaintiff shall file an outline of all claims that remain pending in accordance with the Outline Requirements attached hereto as Attachment "A." Defendants are to respond in accordance with the instructions contained in the Outline Requirements attached hereto as Attachment "A."**

**Plaintiff is further ordered, as to these claims, to file the previously-ordered Rule 7(a) Report.  Plaintiff shall provide both the Rule 7(a) Report and the outline within ten days of entry of this Order.**

THUS DONE AND SIGNED at Lafayette, Louisiana, this _____ of March, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE